UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CRIMINAL NO. 3:15-CR-0494-B-2 |
| § | |
| JOHN CHRISTOPHER WARE, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant John Christopher Ware's Motion for Modification of Sentence (Doc. 208). For the reasons set forth below, the Court **DENIES** Ware's motion **WITHOUT PREJUDICE**.

### I.

### BACKGROUND

After Ware pleaded guilty to conspiracy to distribute a controlled substance, the Court sentenced him to 135 months of imprisonment and 3 years of supervised release. Doc. 183, J., 1–3. Ware, who is now forty-nine years old, is serving his sentence at Oakdale II Federal Correctional Institution ("Oakdale II FCI") and is scheduled to be released in September 2028.[1] As of November 30, 2021, Oakdale II FCI reports zero active and 272 recovered cases of COVID-19 among its

---

[1] The Court derives this information from the Bureau of Prisons ("BOP")'s Inmate Locator, available at https://www.bop.gov/inmateloc/ (last visited November 30, 2021).

-1-

inmates and reports that 1,738 inmates have been fully vaccinated against the disease.[2]

On April 15, 2021, Ware filed his first motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Doc. 203, Def.'s Mot., 1. Finding that Ware did not demonstrate proof of exhaustion or extraordinary and compelling reasons for his release, as the statute requires, the Court denied the motion without prejudice on April 28, 2021. Doc. 207, Mem. Op. & Order. On October 13, 2021, Ware filed a second compassionate-release motion, stating that he now satisfies both requirements. *See* Doc. 208, Mot., 1. The Court reviews Ware's motion below.

## II.

## LEGAL STANDARD

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582©. But under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (footnote omitted) (quoting § 3582(c)(1)(A)(I)).

---

[2] The Court accessed these statistics from the BOP's COVID-19 webpage, available at https://www.bop.gov/coronavirus/ (last visited November 30, 2021). Ware appears to argue that these numbers may be inaccurate, quoting a case that found that "testing inside prisons has been scant except for people who self-report symptoms—which means that statistics about the number of infections already in BOP facilities are largely meaningless." Doc. 208, Mot., 2 (quoting *United States v. Esparza*, 2020 WL 1696084, at *2 (D. Id. Mar. 7, 2020)). However, the Court notes that the quoted case is from early in the pandemic and that this Court and other courts have repeatedly relied upon the BOP statistics. *See, e.g., United States v. Cisneros*, 2021 WL 977098, at *3 (N.D. Tex. Mar. 15, 2021); *United States v. Bechel*, 2021 WL 2435731, at *1 (S.D. Ill. June 15, 2021); *United States v. Motley*, 2021 WL 1175441, at *3 (W.D. Ky. Mar. 26, 2021).

## III.

## ANALYSIS

A.  *Ware Has Demonstrated Proof of Exhaustion.*

Section 3582(c)(1)(A) allows a defendant to bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).[3]

The Court denied Ware's first motion for compassionate release because, in part, the letters he attached in support of his motion did not show that the warden of his facility had received his request for compassionate release. Doc. 207, Mem. Op. & Order, 3. In his new motion, Ware attaches a letter from the warden—dated September 14, 2021—denying his request. Doc. 208, Mot., 13. This evidence shows "the lapse of 30 days from the receipt of [a compassionate-release] request by the warden of the defendant's facility." § 3582(c)(1)(A). Thus, Ware has demonstrated proof of exhaustion and the Court turns to the merits of his motion.

B.  *Ware Has Not Demonstrated Extraordinary and Compelling Reasons for Release.*

Ware has not shown "extraordinary and compelling reasons" warranting compassionate release. *See* § 3582(c)(1)(A). Section 3582 (c)(1)(A)(I) does not define the "extraordinary and compelling reasons" that may merit compassionate release. *See generally id.* Rather, Congress

---

[3] The Court clarified its interpretation of the thirty-day prong of the exhaustion requirement in *United States v. Ezukanma*, 2020 WL 4569067, at *2–5 (N.D. Tex. Aug. 7, 2020). In sum, based on the plain text of § 3582(c)(1)(A), the Court concluded that to comply with the statute's exhaustion requirement, a defendant may show that thirty days have passed since the warden's receipt of his compassionate-release request—irrespective of a denial. *See id.* at *5.

"delegated that authority to the Sentencing Commission" and directed it to "promulgate general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (citations, quotation marks, and alterations omitted).

Prior to the passage of the First Step Act, the Sentencing Commission issued a policy statement—U.S.S.G. § 1B1.13—that "sets forth three circumstances that are considered 'extraordinary and compelling reasons.'" *United States v. Muniz*, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020) (citing § 1B1.13(1)(A) & cmt. n.1). These include the defendant's medical condition, age, and family situation. *See* § 1B1.13(1)(A) & cmt. 1(A)–©.[4] The Fifth Circuit has held that Section 1B1.13 only applies to motions filed by "the Director of the [BOP]" and thus does not "bind[] a district court addressing a prisoner's own motion under § 3582." *Shkambi*, 993 F.3d at 393–93 (citing § 1B1.13). While not binding, § 1B1.13 and its commentary nonetheless inform the Court's analysis of a prisoner's motion as to what constitutes extraordinary and compelling reasons for compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to . . . § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam) (noting that U.S.S.G. § 1B1.13 is "not dispositive" but "guid[ing]"); *United States v. Contreras*, 2021 WL 1536504, at *4 (E.D. Tex.

---

[4] The policy statement also provides a catch-all provision for the existence of "an extraordinary and compelling reason other than, or in combination with," the three circumstances set forth above, "[a]s determined by the Director of the [BOP.]" § 1B1.13(1)(A) cmt. n.1.

Apr. 19, 2021) (finding § 1B1.13 informative in a district court's consideration of an inmate's motion in light of *Shkambi*'s holding).

Considering Ware's motion in light of § 1B1.13 and applying its discretion, the Court concludes that Ware has not provided "extraordinary and compelling reasons" for release. *See* § 3582(c)(1)(A).

Ware argues that the continued threat of COVID-19 at Oakdale II FCI, in light of his serious preexisting medical conditions, constitutes extraordinary and compelling circumstances that justify modification of his sentence. Doc. 208, Mot., 1. Ware, who is forty-nine years old, "suffers from several chronic health conditions that include obesity, type II diabetes, hypertension, cerebrovascular disease, [and] renal disease." *Id*. at 1–2. He has also suffered three strokes. *Id*. In March of 2021, one of his toes had to be "partially amputated as a result of diabetic neuropathy" due to uncontrolled diabetes. *Id*. Ware claims that this new amputation, coupled with a previous toe amputation, "greatly [a]ffects the way he walks" and that he "has not received any physical therapy to teach him how to walk with 2 amputated toes." *Id*. at 3. Ware also claims that his diabetes remains uncontrolled and that he is therefore at risk for additional amputations. *Id*. at 1. He attributes his uncontrolled diabetes "to poor carbohydrate rich food and sub-par generic medications offered at Oakdale II FCI." *Id*.

Ware argues that "[t]hese chronic conditions . . . leave [him] at daily risk of serious harm" from COVID-19 "because of the impact these co-morbidities have upon the immune system." *Id*. at 2. While Ware has been vaccinated against COVID-19, *id*. at 4, 14, he argues that "[a]s of October 2021 . . . 51% of [BOP] staff members have refused the vaccine . . . [and] nearly 47% of all inmates have also refused vaccination," and that recent evidence shows waning vaccine effectiveness "after six months." *Id*. at 2, 4. Moreover, Ware claims that "the Delta variant is more transmissible [than

prior COVID-19 variants], more likely to require hospitalizations[,] and is resistant to existing vaccines." *Id.* at 4. Therefore, "even[]though he is vaccinated, he is still at risk for suffering serious complications if he contracts the COVID-19 virus." *Id.* Ware also argues that, as of the writing of his motion, he had not been able to receive a COVID-19 booster. *Id.*

In support of his arguments, Ware requests that the Court review the following cases, in which he claims "the [c]ourts found that 'extraordinary and compelling' reasons still exist[ed] although the defendants were fully vaccinated." *Id.* (citing *United States v. Pappa*, 2021 WL 1439714, at *4 (S.D. Fla. Apr. 1, 2021); *United States v. Parish*, 2021 WL 1152960, at *2–3 (D.S.C. Mar. 17, 2021); *United States v. Reyes*, 2021 WL 2154714, at *3–4 (D. Conn., May 26, 2021); *United States v. Manglona*, 2021 WL 808386, at *1 (W.D. Wash. Mar. 3, 2021);[5] *United States v. Kafi*, 2021 WL 2292319, at *1 (E.D. Mich. June 4, 2021); *United States v. Sandoval*, 2021 WL 673566, at *4 (W.D. Wash. Feb. 22, 2021); *United States v. Hatcher*, 2021 WL 1535310, at *4 (S.D.N.Y. Apr. 19, 2021) The Court notes that none of these cases are binding upon this Court or were decided in this Circuit. Regardless, the Court has reviewed each of these cases and briefly describes them below before turning to Ware's allegations.

In *Pappa*, the court found extraordinary and compelling circumstances based on a defendant's chronic health conditions including obesity and Type II diabetes, "advanced age" (fifty-nine) years old), and "the threat of contracting COVID-19 in prison." 2021 WL 1439714, at *3–4.

---

[5] Ware's motion cites to *United States v. Manglona*, 2021 WL 211537 (W.D. Wash. Jan. 21, 2021), which was reversed on reconsideration. Because the Court construes Ware's motion as intending to reference the opinion in which the *Ware* court, on reconsideration, found extraordinary and compelling circumstances, the Court has substituted discussion of that case for the one actually cited by Ware. *C.f. Erickson v. Pardus*, 551 U.S. 89, 99 (2007) (noting that "[a] document filed pro se is 'to be liberally construed'. . . and '[a]ll pleadings shall be so construed as to do substantial justice'") (quotations omitted).

In *Parish*, the court found extraordinary and compelling circumstances based on a defendant's "advanced age" (sixty-three years old) and medical conditions including "a 100% distal blockage of the LAD, which is not operative[,] . . . a moderate level of chronic kidney disease, which is one category above severe kidney disease[,] . . .Type II adult onset diabetes, hypertension, atrial fibrillation, and obesity." 2021 WL 1152960, at *2.

In *Reyes*, the court found extraordinary and compelling circumstances based on a defendant's "class 2 obesity[,] . . . high blood pressure, hypertension[,] . . . and hypercholesterolemia," where the defendant had served 120 months of a 300-month sentence, an intervening change in the law would have reduced the mandatory minimum sentence for the defendant's offense to 120 months, the government did not oppose the defendant's release, and the court found the defendant had undergone a "personal transformation" indicating rehabilitation. 2021 WL 2154714, at *1, *4.

In *Manglona*, the court found extraordinary and compelling circumstances based on a defendant's "high cholesterol, high blood pressure, PTSD, moderate asthma and obesity." 2021 WL 808386, at *1.

In *Kafi*, the court found extraordinary and compelling circumstances based on a defendant's advanced age (seventy-two years old) and "multiple medical conditions including: Type [II] diabetes, hyperlipidemia, and neurocognitive disorders including dementia." 2021 WL 2292319, at *1.

In *Sandoval*, the court found extraordinary and compelling circumstances where a defendant had "under[gone] a kidney transplant[,] . . . t[ook] immunosuppressant medication because of the transplant[,] . . . suffer[ed] from chronic kidney disease, several heart conditions, Type II diabetes" and obesity. 2021 WL 673566, at *4.

Finally, in *Hatcher*, the court found extraordinary and compelling circumstances where a

defendant's pre-existing medical conditions "include[d] chronic pulmonary obstructive disease ("COPD"), high blood pressure, clinical obesity, and HIV," and, further, due to lengthy facility lockdowns, "she ha[d] been unable to receive mental health care, drug abuse treatment, and other important services that the Court envisioned her receiving while incarcerated." 2021 WL 1535310, at *1, *4.

As the Court stated when reviewing Ware's first motion, Ware's concerns about the conditions at Oakdale II FCI—both the general threat the COVID-19 pandemic poses to those housed there and the quality of food and medicines available there—do not give rise to extraordinary and compelling circumstances. The Court recognizes the unprecedented nature of COVID-19 and the outbreak of the virus at various federal prisons during 2020 and 2021, but Oakdale II FCI's present statistics—which indicate no active cases of COVID-19 among inmates—suggest that the facility is not experiencing an outbreak at present. Further, generalized concerns about the spread of COVID-19 at Ware's facility do not give rise to extraordinary and compelling reasons for release. Rather, "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements" about, for example, the propriety of incarceration for all inmates at a given facility. *See United States v. Delgado*, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020).

Regarding Ware's individual circumstances, the Court finds that Ware's chronic medical conditions, though adequately documented by attached medical records, do not rise to the level of extraordinary and compelling. First, this Court finds persuasive the BOP's definition of "advanced age" as "at least 65 years old." *See* § 1B1.13(1)(A) & cmt. 1(B); *United States v. Fowler*, 2020 WL 7408239, at *3 n.2 (N.D. Tex. Nov. 17, 2020). Therefore, Ware—at age forty-nine—is not of "advanced age," which is one factor the *Pappa*, *Parish*, and *Kafi* courts considered in finding

extraordinary and compelling circumstances in those cases.[6] *See Pappa*, 2021 WL 1439714, at *4; *Parish*, 2021 WL 1152960, at *2–3; *Kafi*, 2021 WL 2292319, at *1.

Nor do Ware's chronic conditions, while undoubtedly serious, qualify as extraordinary and compelling. *See* § 1B1.13 cmt. n.1(A). "Extraordinary and compelling reasons in the context of a defendant's medical condition include when the defendant is . . . 'suffering from a serious physical or medical condition, . . . a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *Fowler*, 2020 WL 7408239, at *3 (quoting § 1B1.13 cmt. n.1(A)). Ware alleges that he suffers from serious medical conditions including "obesity, diabetes type II, hypertension, cerebrovascular disease, [and] renal disease" and has had three strokes. Doc. 208, Mot., 1. Ware also alleges that the toe amputations he has undergone as a result of his diabetes "greatly [a]ffects the way he walks." *See id.* at 3. However, Ware does not allege that toe amputations have resulted in "a serious functional impairment." *Id.*; s*ee* § 1B1.13 cmt. n.1(A). And while Ware alleges that the "poor carbohydrate rich food and sub-par generic medicines offered at Oakdale II FCI"result in his diabetes remaining uncontrolled, he does not submit any evidence to support this allegation. *C.f. Fowler*, 2020 WL 7408239, at *3. Therefore, Ware has not shown he is unable to provide self-care in Oakdale II FCI. S*ee* § 1B1.13 cmt. n.1(A).

Moreover, this Court cannot conclude that Ware's specific medical conditions, coupled with

---

[6] As noted previously, two of these courts considered the defendant's advanced age where the defendant was under age sixty-five, but the decisions of these courts are not binding upon this Court, which finds § 1B1.13(1)(A) & cmt. 1(B) instructive. *See United States v. Fowler*, WL 7408239, at *3 n.2 (N.D. Tex. Nov. 17, 2020).

the risk of COVID-19 infection at Oakdale II FCI, constitute extraordinary and compelling reasons for modification of his sentence. As Ware notes, he has made the laudable decision to become vaccinated against COVID-19. Doc. 208, Mot., 4. Though Ware claims that he remains at risk from breakthrough infections, at the time of his motion had not been able to receive a COVID-19 booster shot, and is housed with a significant number of inmates and staff who have chosen to decline vaccination, the BOP currently reports zero active cases at Oakdale II FCI. Moreover, unlike the plaintiffs in two of the cases Ware cites, Ware does not claim that his medical conditions are of a type that leave him immunocompromised and thus extraordinarily vulnerable to COVID-19 infection, despite vaccination. *C.f. Hatcher*, 2021 WL 1535310, at *4 (HIV); *Sandoval*, 2021 WL 673566, at *4 (immunosuppressive drug regime following kidney transplant); *United States v. Delgado*, 2020 WL 2542624, at *2–3 (N.D. Tex. May 19, 2020) (noting that a defendant had not shown extraordinary and compelling reasons to justify his relief where he alleged "a suppressed immune system caused by medication he must take to prevent the rejection of a transplanted kidney" but submitted no recent medical records to support the allegation).

In sum, there is nothing before the Court that indicates Ware's personal circumstances rise to the level of extraordinary and compelling.[7]

---

[7] To the extent that this conclusion differs from the conclusions of other courts considering defendants with medical conditions and vaccination status similar to Ware's, the Court must respectfully disagree with those courts' decisions to find extraordinary and compelling circumstances based on such facts. *See Reyes*, 2021 WL 2154714, at *3–4; *Manglona*, 2021 WL 808386, at *1.

C. *Consideration of the 18 U.S.C. § 3553(a) Factors Suggests that Compassionate Release Is Not Warranted.*

The Court also notes that before granting compassionate release under § 3582(c)(1)(A), the Court must consider the sentencing factors of § 3553. § 3582(c)(1)(A). Because Ware has not shown extraordinary and compelling reasons for release, the Court need not conduct a full § 3553 analysis today. Nonetheless, the Court emphasizes that § 3553 requires the Court to consider whether a sentence "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense[.]" § 3553(a)(2)(A).

In Ware's case, the Court found 135 months of imprisonment appropriate to serve these goals. *See* Doc. 138, J., 2. Ware began his sentence of confinement in February 2019. *Id.* at 2. With a statutory release date of September 2028, approximately 100 months—or seventy-four percent—of Ware's sentence remain to be served. Under these circumstances, the Court is reluctant to conclude that the § 3553 factors support compassionate release. *See Thompson*, 984 F.3d at 434 (noting that compassionate release is generally granted only "for defendants who had already served the lion's share of their sentences"). Thus, while the Court declines to foreclose compassionate release for Ware based on § 3553, the Court advises Ware that § 3553 could present an obstacle with respect to future compassionate-release requests.

In the Court's discretion, the Court **DENIES** Ware's motion **WITHOUT PREJUDICE.**

## IV.

## CONCLUSION

Ware's request for compassionate release under § 3582(c)(1)(A) fails because he has not demonstrated extraordinary and compelling reasons for compassionate release. For these reasons, the

-11-

Court **DENIES** Ware's motion (Doc. 203) **WITHOUT PREJUDICE**.

By denying Ware's motion without prejudice, the Court permits Ware to file a subsequent motion for compassionate release in the event he can provide evidence supporting a finding of extraordinary and compelling reasons for release. However, the Court notes that to the extent Ware merely repeats or provides minor elaborations to arguments that this Court has already rejected, such arguments will be summarily rejected.

**SO ORDERED.**

**SIGNED: December 6, 2021.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE